UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

---

Christine R. Johnson,                                              No. 1:19-cv-00615

                          Plaintiff,

          vs.

TD Bank USA, National Association; et
al.,

                          Defendants.

---

**DEFENDANT TD BANK USA, N.A.'S
MOTION FOR SUMMARY JUDGMENT**

---

Defendant TD Bank USA, N.A., respectfully moves this Court under Federal

Rule of Civil Procedure 56 for summary judgment.


**Legal Standard**

Rule 56 requires a summary judgment "if the movant shows that there is no

genuine dispute as to any material fact and the movant is entitled to a judgment as a

matter of law."[1] The Supreme Court has endorsed summary judgment where applying

the law to the facts compels but one result:

> Summary judgment procedure is properly regarded not as a disfavored
> procedural shortcut, but rather as an integral part of the Federal Rules as a
> whole, which are designed "to secure the just, speedy and inexpensive
> determination of every action." . . . . Rule 56 must be construed with due
> regard not only for the rights of persons asserting claims and defenses that

---

[1] Fed. R. Civ. P. 56(c)(3) (summary judgment: motion and proceedings thereon).

1

> are adequately based in fact to have those claims and defenses tried to a
> jury, but also for the rights of persons opposing such claims to
> demonstrate in the manner provided by the Rule, prior to trial, that the
> claims and defenses have no factual basis.[2]

Rule 56 "mandates the entry of summary judgment . . . against a party who fails to make

a showing sufficient to establish the existence of an element essential to that party's case,

and on which that party will bear the burden of proof at trial."[3]

The mere presence of a factual dispute will not preclude summary judgment.[4] A

disputed fact must be *material*: "Only disputes over facts that might affect the outcome

of the suit under the governing law will properly preclude summary judgment. Factual

disputes that are irrelevant or unnecessary will not be counted."[5] And even a disputed

material fact will not overcome a motion for summary judgment unless the evidence can

satisfy the applicable evidentiary standard. A mere "scintilla" will not suffice:[6] "If the

evidence is merely colorable, or not significantly probative, summary judgment may be

granted."[7]

---

[2] *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).

[3] *Marten v. Godwin,* 499 F.3d 290, 295 (3d Cir. 2007) (quoting *Celotex*).

[4] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986) ("the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact" (Court's emphasis)).

[5] *Id.* at 248.

[6] *Id.* at 251 (quoting *Improvement Co. v. Munson*, 81 U.S. (14 Wall.) 442, 448 (1872)).

[7] *Id.* at 249–50 (internal citations omitted).

## Argument

Ms. Johnson claims that TD violated the Fair Credit Reporting Act by failing to properly investigate her dispute with regard to information that TD was furnishing to Equifax.[8] She now says that she was a victim of identity theft. But she earlier told a bankruptcy court that the account was hers and that she didn't dispute it.

I. **A complaint against a furnisher under the Fair Credit Reporting Act must involve an alleged inaccuracy.**

Congress, finding that "[a]n elaborate mechanism has been developed for investigating and evaluating the credit worthiness, credit standing, credit capacity, character, and general reputation of consumers,"[9] has extensively and exhaustively regulated the credit-granting and consumer-credit-reporting industries. To impose uniform nationwide standards on the industry, Congress enacted the Fair Credit Reporting Act,[10] which regulates both consumer reporting agencies[11] and creditors who furnish information to them.[12] The Act establishes a detailed scheme by which a

---

[8]Ms. Johnson disputed information that TD was reporting to other consumer reporting agencies as well, *see* Facts, ¶ 23; *id.*, ¶ 25(b), but her claim involves only her dispute through Equifax in late December 2018. *See* Pl.'s Am. Resps. & Objec'ns TD's Interrogs. [Melendez Decl., Ex. J], Answer No. 3.

[9]15 U.S.C. § 1681(a)(2).

[10]Fair Credit Reporting Act, Pub. L. No. 91-508, 84 Stat. 1127 (1970) (codified at 15 U.S.C. ch. 42, subch. III, §§ 1681–81x).

[11]*See* 15 U.S.C. § 1681(a)(3)–(4).

[12]*See* 15 U.S.C. § 1681s-2 (responsibilities of furnishers of information to consumer reporting agencies).

3

consumer can dispute any information being reported to a consumer reporting agency,[13] and sets forth detailed steps that a furnisher must take in case of such a dispute.[14]

The applicable statute, 15 U.S.C. § 1681s-2(b), sets forth the "duties of furnishers of information upon notice of dispute."[15] The amended complaint alleges that TD violated the statute "by failing to conduct an investigation with respect to the disputed information," "by failing to review relevant information provided by Equifax," "by failing to report the results of the investigation to Equifax," and "by failing to promptly delete that item of information; or permanently block the reporting of that item of information."[16]

As a threshold matter, however, a dispute must involve "the completeness or accuracy" of information that the furnisher is providing. A furnisher's duty of investigation is not triggered unless the consumer first makes "a showing that the reported information was in fact inaccurate."[17] The standards that apply to an investigation by a consumer reporting agency likewise apply to an investigation by a

---

[13]*See* 15 U.S.C. § 1681i (procedure in case of disputed accuracy).

[14]*See* 15 U.S.C. § 1681s-2(b) (duties of furnishers of information upon notice of dispute).

[15]15 U.S.C. § 1681s-2(b).

[16]Am. Compl. [ECF Doc. 27], ¶¶ 33–37 at 6.

[17]*DeAndrade v. Trans Union LLC*, 523 F.3d 61, 67 (1st Cir. 2008); *accord Keuhling v. Trans Union, LLC*, 137 F. App'x 904, 908 (7th Cir. 2005) (affirming summary judgment for defendant where consumer "produced no evidence tending to establish that his credit report was inaccurate"); *Cahlin v. Gen. Motors Acceptance Corp.*, 936 F.2d 1151, 1156 (11th Cir. 1991); *McCelland v. Experian Info. Solutions, Inc.*, No. 04-C-56586, 2006 U.S. Dist. LEXIS 57068, at *7 (N.D. Ill. July 28, 2006) (quoting *Cahlin*); *see also Henson v. CSC Credit Servs.*, 29 F.3d 280, 284 (7th Cir. 1994) (quoting *Cahlin*).

furnisher.[18] To sustain a claim for inadequate investigation against a furnisher, a consumer must "present evidence of actual inaccuracies in his account that an alternative investigation might have uncovered."[19] A consumer suing a furnisher therefore "must make a 'prima facie showing of inaccurate reporting.'"[20]

## II. The only alleged "inaccuracy" here is an allegedly disputed debt that Ms. Johnson admitted in her bankruptcy petition she incurred and did not dispute.

The only "inaccuracy" that Ms. Johnson alleges is that TD was reporting an account that she says wasn't hers:

> 11. On or before April 19, 2017, Plaintiff learned she was victim of identity theft.
> 12. Plaintiff informed Target card services that on March 27, 2017, an unknown offender gained access to Plaintiff's personal

---

[18]*Evantash v. G.E. Capital Mortg. Servs., Inc.*, No. 02-CV-1188, 2003 U.S. Dist. LEXIS 23131, at *21 (E.D. Pa. Nov. 25, 2003); *Bruce v. First U.S.A. Bank, N.A.*, 103 F. Supp. 2d 1135, 1143 (E.D. Mo. 2000) ("Section 1681s-2(b)'s investigation requirement for furnishers . . . is analogous to the requirement imposed upon credit reporting agencies under § 1681i(a) to reinvestigate a consumer's dispute regarding information contained in his credit report").

[19]*Chiang v. Verizon New England, Inc.*, 595 F.3d 26, 41 (1st Cir. 2010); *cf. Washington v. Equifax Info. Servs. LLC*, 373 F. App'x 633, 633–34 (7th Cir. 2010) (affirming summary judgment for consumer reporting agency where plaintiff "did not produce any evidence showing that his Equifax credit report was inaccurate").

[20]*Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 890 (9th Cir. 2010) (quoting *Dennis v. BEH-I, LLC*, 520 F.3d 1066, 1069 (9th Cir. 2008)); *accord Pittman v. Experian Info. Solutions, Inc.*, 901 F.3d 619, 629 (6th Cir. 2018) ("a threshold showing of inaccuracy or incompleteness is necessary in order to succeed on a claim under § 1681s-2(b)"); *see also Hunt v. JPMorgan Chase Bank, N.A.*, 770 F. App'x 452, 458 (11th Cir. Apr. 25, 2019) ("A plaintiff must show a factual inaccuracy rather than the existence of disputed legal questions to bring suit against a furnisher under § 1681s-2(b)."); *Chiang*, 595 F.3d at 38 ("a plaintiff's required showing is *factual* inaccuracy, rather than the existence of disputed legal questions" (court's emphasis)).

information and applied for and obtained a Target REDcard™ with Plaintiff's personal information.[21]

35.     Had TD Bank conducted a reasonable investigation, TD Bank would have discovered that Plaintiff fell victim to identify theft, and promptly modified those items of information, deleted those items of information or permanently blocked the reporting of that item of information.[22]

But those allegations contradict Ms. Johnson's verified statements in her bankruptcy.

Ms. Johnson's bankruptcy petition lists the subject Target-card account as an unsecured debt. The petition admits that Ms. Johnson incurred the debt. The petition contains a space where she could have indicated that she disputed the debt, but she left that space blank, indicating that she did not dispute the debt.[23] Her complaint says that she knew about the alleged identity theft as early as March 2017,[24] over a year before her bankruptcy petition in August 2018.

Although Ms. Johnson filed a police report, she refused to sign it. The investigating officer wrote that "Christine advised she does not want to sign a complaint at this time and only wants the fraud documented." So she told the Bankruptcy Court under oath in August 2018 that the account was hers and she didn't dispute it, but she

---

[21]Am. Compl. [ECF Doc. 27], ¶¶ 11–12 at 3.

[22]*Id.*, ¶ 35 at 6.

[23]Facts, ¶ 25(c); *id.*, ¶ 23(b).

[24]Am. Compl., ¶ 11 at 3.

refused to substantiate the inconsistent information that she gave to the Tinley Park

Police Department in December 2018.[25]

III.   **TD was entitled to rely on Ms. Johnson's bankruptcy petition and her refusal to sign the police report, but its investigation went much further.**

This Court declined the Defendants' invitation to apply judicial estoppel to Ms.

Johnson's claims based on her statements in her bankruptcy petition:

> Given that Johnson's first amended complaint sufficiently alleges that the
> Target REDcard was a consequence of identity theft, the Court will not
> estop her from asserting this position at this stage in the litigation. Indeed,
> the Seventh Circuit has cautioned that judicial estoppel is inappropriate at
> the motion to dismiss stage, and the Court will respect its guidance.[26]

TD, however, was not constrained to "view the record in the light most favorable to [the

plaintiff]."[27] TD was entitled to rely on Ms. Johnson's statements in her bankruptcy

petition, and her refusal to sign the police report. The inquiry ought to end there.

Nevertheless, TD's investigations into Ms. Johnson's disputes went much further.

TD's investigations did not support her claim of identity theft, but her bankruptcy

petition and her refusal to sign the police report were only two of more than half a dozen

factors that contributed to TD's conclusion that it was accurately reporting her account.[28]

---

[25]Facts, ¶ 25(d).

[26]ECF Doc. 45 at 6.

[27]*Id.* (quoting *Matthews v. Potter*, 316 F. App'x 518, 523 (7th Cir. 2009)).

[28]Facts, ¶ 25.

7

TD conducted a diligent and extensive investigation into Ms. Johnson's dispute and, in TD's view, the available information weighed against Ms. Johnson's claim that she was a victim of identity theft.

IV. **Ms. Johnson's own discovery responses show that she cannot rebut TD's evidence about its investigations.**

Ms. Johnson's own discovery responses show that she cannot rebut TD's evidence about its investigations:

| TD's Interrogatory | | Ms. Johnson's Answer[29] |
|---|---|---|
| 7. | With respect to TD's investigation into each dispute identified in answer to the preceding interrogatory, set forth— | |
| (a) | to the best of your knowledge, information, and belief, what investigation TD conducted; | Plaintiff is without knowledge of what investigation TD conducted. |
| (b) | to the best of your knowledge, information, and belief, what procedures TD followed; | Plaintiff is without knowledge of what procedures TD followed. |
| (c) | whether TD followed its own procedures and, if not, how it failed to follow them; | Plaintiff is without knowledge of TD's procedures. |
| (d) | what information was provided to TD by any consumer reporting agency, by you, or from any other source, and when that information was provided; | Plaintiff's dispute, driver's license, police report on December 29, 2018. |

---

[29]Pl.'s Am. Resps. & Objec'ns TD's Interrogs. [Melendez Decl., Ex. J], Answer No. 7.

| (e) | what information was provided to TD by any consumer reporting agency, by you, or from any other source, that TD did not review in connection with its investigation; | Plaintiff's police report. |
|-----|-----|-----|
| (f) | whether the results that TD reported to the consumer reporting agencies were incomplete or inaccurate and, if so, how those results were incomplete or inaccurate; | Results were inaccurate as this Target REDcard™ did not belong to Plaintiff. |
| (g) | what results TD should have reported to the consumer reporting agencies, and when and how TD learned the information on which those results would have been based; and | This Target REDcard™ item should have been deleted from Plaintiff's credit report. |
| (h) | what TD should have done that it did not do, and the basis or source of each such duty. | TD should have contacted / followed up with Plaintiff and / or Tinley Park Police Department. *See* 15 U.S.C. §§ 1681s-2(a)(6)(B) and 1681s-2(b) generally. |

Mr. Johnson's interrogatory answers imply that the investigation and procedures don't matter, only the result does; and that whenever a consumer disputes an account, the furnisher must reach the correct conclusion — with absolute certainty, with no margin for error. But the Fair Credit Reporting Act contains no such requirement: it requires only that the furnisher "conduct an investigation," "review all relevant information," and "report the results of the investigation,"[30] which TD did.

---

[30] 15 U.S.C. § 1681s-2(b)(1)(A)–(C).

The Fair Credit Reporting Act does offer guidance to furnishers about the standard for suspecting an inaccuracy: it requires that a furnisher "shall not furnish any information relating to a consumer to any consumer reporting agency if the person knows or has reasonable cause to believe that the information is inaccurate,"[31] and establishes the standard for "reasonable cause to believe that the information is inaccurate" as "having specific knowledge, *other than solely allegations by the consumer*, that would cause a reasonable person to have substantial doubts about the accuracy of the information."[32] The only evidence of inaccuracy here was Ms. Johnson's own letters, which did not mention identity theft; her disputes to the consumer reporting agencies; and the Tinley Park Police Department's report, which was based entirely on allegations from Ms. Johnson herself. All the *independent* evidence — every piece of evidence whose source was not Ms. Johnson herself — pointed the other way. So did some of Ms. Johnson's own evidence, such as her statements in her bankruptcy petition and her refusal to sign the police report.

Ms. Johnson did answer an interrogatory asking "what information was provided to TD . . . that TD did not review in connection with its investigation" by saying, "Plaintiff's police report." But in answer to an interrogatory asking "what investigation TD conducted," she admitted that she "is without knowledge of what investigation TD conducted." She also admitted that the police report "was provided to TD." She therefore

---

[31]15 U.S.C. § 1681s-2(a)(1)(A) (reporting information with actual knowledge of errors).

[32]15 U.S.C. § 1681s-2(a)(1)(D) (emphasis added).

cannot know whether TD reviewed the police report. TD's unrebutted evidence shows that TD *did* review the police report, and that the significant take-away was not the report's recounting of Ms. Johnson's statements but rather her refusal to sign the report.[33]

Ms. Johnson also answered that "TD should have contacted / followed up with Plaintiff and / or Tinley Park Police Department." But TD was already well aware, from Ms. Johnson's letters and from her credit-reporting disputes, of her version of events. TD was also aware of what she told the Tinley Park Police Department. Contacting Ms. Johnson herself, or contacting the police department, would have added no new information[34] — and the significant fact about the police report would have remained that Ms. Johnson refused to sign it.

V. **TD's investigation into Ms. Johnson's dispute was reasonable as a matter of law because she cannot show that additional investigation would have produced a different result.**

This Court need not decide whether Ms. Johnson was a victim of identity theft. This Court must decide only whether TD's investigation into her dispute was reasonable.

Under Ms. Johnson's view, a furnisher violates the statute when it doesn't reach the consumer's desired "correct" conclusion, and is subject to strict liability for any

---

[33]Facts, ¶ 25(d).

[34]Wolf Dep. [Melendez Decl., Ex. L] at 135:8–11 ("Q. Okay. Did TD Bank or Target contact the Tinley Park Police Department? A. We didn't need to. We had the police report."); *id.* at 135:23 – 136:3 ("Q. Okay. Now, could have TD Bank contacted the Tinley Park Police Department? A. We could have, but there would be no need to. It was — every — all the information was on the report.")

factual deficiency in its report. That view is most convenient for a plaintiff, but it is wrong as a matter of law: the Fair Credit Reporting Act is not a strict-liability statute even with respect to consumer reporting agencies,[35] and does not hold furnishers to a higher standard than it holds the reporting agencies.[36] A furnisher's reinvestigation of a consumer's dispute must be *reasonable*,[37] but it need not be *perfect*: "the requirement that furnishers investigate consumer disputes is procedural. An investigation is not necessarily unreasonable because it results in a substantive conclusion unfavorable to the consumer, even if that conclusion turns out to be inaccurate."[38] And even where an investigation does reach an inaccurate conclusion, a defendant "can escape liability if it establishes that an inaccurate report was generated by following reasonable procedures."[39] A question as to whether a furnisher's reinvestigation was reasonable is appropriate for summary judgment.[40]

---

[35]*Henson v. CSC Credit Servs.*, 29 F.3d 280, 284 (7th Cir. 1994) (Fair Credit Reporting Act "does not make reporting agencies strictly liable for all inaccuracies" (quoting *Cahlin v. Gen. Motors Acceptance Corp.*, 936 F.2d 1151, 1156 (11th Cir. 1991))); *Spence v. TRW, Inc.*, 92 F.3d 380, 383 (6th Cir. 1996) ("This section [1681e(b)] does not impose strict liability for inaccurate entries in consumer reports"); *Guimond v. Trans Union Credit Info. Co.*, 45 F.3d 1329, 1333 (9th Cir. 1995) ("The FCRA does not impose strict liability . . .").

[36]*Bruce v. First U.S.A. Bank, N.A.*, 103 F. Supp. 2d 1135, 1143 (E.D. Mo. 2000) ("Section 1681s-2(b)'s investigation requirement for furnishers of credit information . . . is analogous to the requirement imposed upon credit reporting agencies under § 1681i(a) to reinvestigate a consumer's dispute regarding information contained in his credit report").

[37]*Gorman v. Wolpoff & Abramson, LLP*, 552 F.3d 1008, 1015–17 (9th Cir. 2009); *Johnson v. MBNA Am. Bank, NA*, 357 F.3d 426, 429–31 & n.2 (4th Cir. 2004).

[38]*Gorman*, 552 F.3d at 1021.

[39]*Cahlin v. General Motors Acceptance Corp.*, 936 F.2d 1151, 1156 (11th Cir. 1991); *cf. Sarver v. Experian Info. Solutions*, 390 F.3d 969, 972 (7th Cir. 2004) ("a mistake [in a consumer

Ms. Johnson cannot prevail unless she can show that additional investigation would have produced a different result.[41] She must show that TD overlooked some *fact* that an additional investigation would have uncovered and that would have led to a different result. But TD was operating with full information; it simply disagreed — rightly or wrongly — with Ms. Johnson's view. A claim under the Fair Credit Reporting Act fails in such a case: "A consumer . . . cannot bring a . . . claim against a credit reporting agency when it exercises its independent professional judgment, based on full information, as to how a particular account should be reported on a credit report."[42]

Ms. Johnson's theory is evidently not that any additional investigation would have uncovered some fact that TD didn't already know about, but rather that additional investigation would have forced TD to stare harder and longer at the facts that it already knew, and that a harder, longer look at those facts would have brought TD around to her

reporting agency's investigation] does not render the procedures unreasonable"); *Henson v. CSC Credit Servs.*, 29 F.3d 280, 284 (7th Cir. 1994).

[40]*Gorman*, 552 F.3d at 1017, 1021; *Westra v. Credit Control of Pinellas*, 409 F.3d 825, 827 (7th Cir. 2005).

[41]*Chiang v. Verizon New England, Inc.*, 595 F.3d 26, 41 (1st Cir. 2010).

[42]*Cahlin*, 936 F.2d at 1160 (affirming summary judgment for defendant where "no additional amount of factual investigation . . . would have revealed any 'inaccuracy'"); *Benson v. Trans Union, LLC*, 387 F. Supp. 2d 834, 843–44 (N.D. Ill. 2005) (quoting *Cahlin*). The *Cahlin* and *Benson* courts court affirmed summary judgment for a consumer reporting agency, but the standards for a furnisher's investigation under section 1681s-2(b) follow from the standards for a consumer reporting agency's investigation under section 1681i(a) [FCRA § 611(a)], and federal courts have followed *Cahlin* in cases involving furnishers' duties under section 1681s-2(b). *See, e.g., Johnson v. MBNA Am. Bank, NA*, 357 F.3d 426, 431 (4th Cir. 2004); *Chiang*, 2009 WL 102707, at *9–11; *Donovan v. Bank of Am.*, 574 F. Supp. 2d 192, 206 & n. 82 (D. Me. 2008); *King v. Asset Acceptance, LLC*, 452 F. Supp. 2d 1272, 1278 (N.D. Ga. 2006); *O'Connor v. Trans Union, LLC*, 2006 WL 3497315, at *2 (E.D. Mich. Nov. 30, 2006); *Bruce v. First U.S.A. Bank, N.A.*, 103 F. Supp. 2d 1135, 1143 (E.D. Mo. 2000).

way of seeing things. But wishing and hoping aside, Ms. Johnson cannot show that additional investigation would have produced a different result.

## Conclusion

A complaint against a furnisher under the Fair Credit Reporting Act must involve an alleged inaccuracy. The only alleged "inaccuracy" here is an allegedly disputed debt that Ms. Johnson admitted in her bankruptcy petition she incurred and did not dispute.

TD was entitled to rely on Ms. Johnson's bankruptcy petition and her refusal to sign the police report. The inquiry ought to end there.

Nevertheless, TD's investigations into Ms. Johnson's disputes went much further. TD's investigations did not support her claim of identity theft, but her bankruptcy petition and her refusal to sign the police report were only two of more than half a dozen factors that contributed to TD's conclusion that it was accurately reporting her account. Every piece of evidence whose source was not Ms. Johnson herself pointed against her claim of identity theft. So did some of Ms. Johnson's own evidence.

TD conducted a diligent and extensive investigation into Ms. Johnson's dispute and, in TD's view, the available information weighed against Ms. Johnson's claim that she was a victim of identity theft. Ms. Johnson's own discovery responses show that she cannot rebut TD's evidence about its investigations. TD's investigation into Ms. Johnson's dispute was reasonable as a matter of law because she cannot show that additional investigation would have produced a different result.

Therefore, TD respectfully seeks a summary judgment in its favor.

14

January 9, 2020.

BARNES & THORNBURG LLP

/s/ Brian Melendez

_____

Brian Melendez, License No. 0223633
    (Minn.) (admitted pro hac vice)
Suite 2800
225 South Sixth Street
Minneapolis, MN 55402-4662
Ph. 612.367.8734
Fax 612.333.6798
brian.melendez@btlaw.com

        in association with

Amy R. Michelau
BARNES & THORNBURG LLP
Suite 4400
One North Wacker Drive
Chicago, IL 60606-2833
Ph. 312.214.4860
Fax 312.759.5646
amy.michelau@btlaw.com

Attorneys for Defendant
    TD Bank USA, N.A.

15