UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

---

Christine R. Johnson,                         No. 1:19-cv-00615

                Plaintiff,

     vs.

TD Bank USA, National Association; et al.,

                Defendants.

---

### DECLARATION OF SUSAN L. WOLF

---

| | |
|---|---|
| State of Minnesota, | ) |
|  | ) SS. |
| County of Hennepin | ) |

Pursuant to 28 U.S.C. § 1746, the undersigned Susan L. Wolf declares:

1. My name is Susan L. Wolf. I am employed by Target Corporation in its Financial & Retail Services division as a Senior Manager, Collections & REDcard Guest Services, and my day-to-day work generally involves projects for Target Corporation's subsidiary Target Enterprise, Inc., which services the Target-branded REDcard credit cards; and for TD Bank USA, N.A., which issues the credit cards that Target Enterprise, Inc., services. I am an adult and competent to testify to the matters in this affidavit.

2. I researched the subject account for this action. The documents that I gathered in connection with that research have been produced in this action, numbered T001–50, T101–16, and T201–381.

1

(a) Ms. Johnson applied twice for a Target credit-card account before she applied for the subject account. Her first application was in September 2007, which resulted in an account that was discharged in bankruptcy in 2010. The records from that account start with T001 and end with T050. The address on that account was 7807 171st Place, Tinley Park, Illinois 60477-3267. The phone number was 708.567.2302.

(b) Her second application was in November 2013, and that application was declined. The records from that application start with T101 and end with T116. The address on the application was 7807 171st Place, Tinley Park, Illinois 60477-3267. The phone number was 708.567.2302.

(c) The records from the subject account begin with T201. The address on the account is 17379 Oleander Avenue, Tinley Park, Illinois 60477-3226. The phone number is 773.803.2602.

3. The subject account was opened in person on March 27, 2017, at a Target store in Joliet, Illinois.

4. When a guest applies in person at a Target store for a credit card, the guest must identify himself or herself. The accepted or required forms of identification have changed from time to time but, at the time when the subject account was opened, the applicable credit-card agreement was provided to the applicant with this notice describing the identity-verification process:

> **Notice – Import Information About Procedures for Opening a New Account**
>
> To help the government fight the funding of terrorism and money laundering activities, Federal law requires all financial institutions to obtain, verify and record information that identifies each person who opens an account.
>
> What this means for you: When you open an account, we will ask for your name, address, date of birth, telephone number, Social Security number and other information that will allow us to identify you. We may also ask for your driver's license or other identifying documents.

5. The person who opened the account presented a driver's license that substantially matched the license that Ms. Johnson submitted with her credit-reporting disputes.

6. TD accessed a credit report from Trans Union in connection with the application for the credit-card account on March 27, 2017. The report compared the identifying information that was submitted with the application for the credit-card account against the information in the consumer reporting agency's file on Ms. Johnson and, while noting an address variance, recommended the application for approval.

7. The application was approved, subject to the applicable credit-card agreement.

8. The person who opened the account used it on March 27, 2017 — the same day as it was opened — to charge children's clothing or children's merchandise, and gift cards.

9. On March 31, 2017, Target mailed a letter to Ms. Johnson at 7807 171st Place, Tinley Park, Illinois 60477 — the address on her prior account that had been discharged in bankruptcy in 2010:

> Dear Christine R Johnson,
>
> We received an application for a Target Credit Card that included your Social Security number, and we want to make sure this is your application.
>
> If you didn't apply, we suggest you contact the national credit bureaus today to put a fraud alert on your credit report. The bureaus and their phone numbers are listed here . . .
>
> And in either case, please call us today at 888-394-1885.
>
> Thanks for your help. We look forward to speaking with you.
>
> Sincerely,
> Target Card Services

The letter also listed the normal business hours.

10. On March 31, 2017, Target also left a voicemail at 708.567.2302 — the phone number on Ms. Johnson's prior account — in an attempt to verify the credit-card activity on March 27, 2017.

11. On April 6, 2017, Target received a call at 11:37 p.m. from 708.200.6818. The call was outside normal business hours, so it was routed to an Interactive Voice Response system. The caller did not speak with a live representative but, through the interactive system, the caller keyed in the 16-digit account number and the last four digits of Ms. Johnson's social-security number.

12. Target provides credit-reporting and recordkeeping services in connection with the Target-branded credit cards that TD issues. Target sent a monthly update about the subject account to the consumer reporting agencies until the account was charged off on November 25, 2017.

13. For each dispute of which TD or Target receives notice from a consumer reporting agency, Target conducts an investigation with respect to the disputed information; reviews all relevant information provided by the consumer reporting agency; and reports the results of the investigation to the three consumer reporting agencies that compile and maintain files on consumers on a nationwide basis — Equifax, Experian, and Trans Union. For its investigation into each dispute, Target not only reviews all relevant information provided by the consumer reporting agency pursuant to the Fair Credit Reporting Act, but it also reviews the information in its own account file — including, where applicable, prior credit-reporting disputes. The results that Target reports to each consumer reporting agency in response to each notice of dispute are based on, and consistent with, all the information available to Target at the time of its response.

14. On December 30–31, 2018, Target processed two disputes (control numbers 999983620022854026 and 999983620286980101) from Equifax through the e-OSCAR system with regard to the completeness or accuracy of information provided by Target to the consumer reporting agencies. The dispute code for each dispute was 103: "Claims true identity fraud, account fraudulently opened. Provide or confirm complete ID." The Automated Consumer Dispute Verification forms included a police report from the Tinley Park Police Department, as well as a copy of Ms. Johnson's driver's license, which substantially matched the license that was submitted with the application for the credit-card account.

15. Target's investigation into Ms. Johnson's disputes through Equifax in December 2018 also reviewed her prior credit-reporting disputes. Target processed credit-reporting disputes through TransUnion on November 20, 2018; Experian on November 26–27, 2018; TransUnion on November 27, 2018; and Experian on December 4, 2018. The information available in connection with those disputes included—

(a) a letter from Ms. Johnson dated November 6, 2018, in which she wrote, "TD Bank USA/Target Credit Card — Limit & highest balance need to be removed," but said nothing about identity theft;

(b) Ms. Johnson's bankruptcy petition, in which she lists the subject Target-card account as an unsecured debt, admits that she incurred the debt, and indicates that she did not dispute the debt;

(c) a copy of a driver's license that substantially matched the license that was submitted with the application for the credit-card account; and

(d) a letter from Ms. Johnson dated November 8, 2018, in which she wrote that the Target credit-card account "was included in my [bankruptcy] case and I am no longer liable" and that the "above accounts . . . have been satisfied through my [bankruptcy] case, and I demand that my credit reports reflect the same," but said nothing about identity theft.

16. On January 3, 2019, Target processed a dispute (control number 99999002005539021) from Equifax through the e-OSCAR system. The dispute code was code was 103: "Claims true identity fraud, account fraudulently opened. Provide or confirm complete ID." The response code was 23: "Disputed information accurate. Updated account information unrelated to the dispute."

17. Target's investigations into Ms. Johnson's disputes did not support her claim of identity theft. The factors that contributed to Target's conclusion included:

(a) The account was opened in person on March 27, 2017, at a Target store in Joliet, Illinois. The person who opened the account presented a driver's license that substantially matched the license that Ms. Johnson submitted with her credit-reporting disputes.

(b) Ms. Johnson had submitted prior credit-reporting disputes that included correspondence in which she did not mention identity theft:

(1) a letter from Ms. Johnson dated November 6, 2018, in which she wrote, "TD Bank USA/Target Credit Card — Limit & highest balance need to be removed," but said nothing about identity theft; and

5

(2) a letter from Ms. Johnson dated November 8, 2018, in which she wrote that the Target credit-card account "was included in my [bankruptcy] case and I am no longer liable" and that the "above accounts . . . have been satisfied through my [bankruptcy] case, and I demand that my credit reports reflect the same," but said nothing about identity theft.

(c) Ms. Johnson's bankruptcy petition lists the subject Target-card account as an unsecured debt. The petition admits that Ms. Johnson incurred the debt. The petition contains a space where Ms. Johnson could have indicated that she disputed the debt, but she left that space blank, indicating that she did not dispute the debt.

(d) Ms. Johnson refused to sign the police report about the alleged identity theft. The investigating officer wrote that "Christine advised she does not want to sign a complaint at this time and only wants the fraud documented." So she told the Bankruptcy Court under oath in August 2018 that the account was hers and she didn't dispute it, but she refused to substantiate the inconsistent information that she gave to the Tinley Park Police Department in December 2018.

(e) Ms. Johnson did not submit an identity-theft affidavit or any other verified evidence of identity theft.

(f) Target mailed a letter to an address associated with Ms. Johnson's prior account, but not associated with the subject account, asking that Ms. Johnson call Target in order to verify the subject account. Target left a voicemail on a number associated with Ms. Johnson's prior account, but not associated with the subject account, in an attempt to verify the subject account. Less than a week later, Target received a response through its Interactive Voice Response system in which the caller keyed in the 16-digit account number and the last four digits of Ms. Johnson's social-security number.

(f) Very few identity thieves who fraudulently apply for a credit card use the resulting credit to buy children's clothing or children's merchandise.

6

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed on January 3, 2020.

*Susan L. Watt*
Susan L. Wolf