UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

---

Christine R. Johnson,

    Plaintiff,

vs.

TD Bank USA, National Association; et al.,

    Defendants.

No. 1:19-cv-00615

---

### DEFENDANT TD BANK USA, N.A.'S MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION TO REOPEN DISCOVERY

Defendant TD Bank USA, N.A., respectfully submits this memorandum in opposition to the Plaintiff's Motion to Reopen Discovery and Suspend Briefing on Defendant's Motion for Summary Judgment (Feb. 4, 2020) [ECF Doc. 59].

**Argument**

Ms. Johnson's motion concerns an April 6, 2017 call to an Interactive Voice Response system. Her motion asks that this Court reopen discovery, and suspend briefing on TD's motion for summary judgment, because "[f]or the *very first time*, after discovery closed, TD Bank disclosed that the April 6, 2017 call came from the phone number (708) 200-6818, which is Plaintiff's cellular phone number."[1] Ms. Johnson's

---

[1] ECF Doc. 59, ¶ 16 at 3 (emphasis in original).

1

motion says that her attorneys were "blindsided by the late disclosure,"[2] and argues that "TD Bank's use of evidence produced after discovery closed is extremely prejudicial to Plaintiff."[3]

I. **The phone number by which Ms. Johnson's attorneys say they were "blindsided" was provided in September 2019, and Ms. Wolf testified about it at her deposition in November 2019.**

The fact that "the April 6, 2017 call came from the phone number (708) 200-6818, which is Plaintiff's cellular phone number" is the only information that Ms. Johnson's motion says "blindsided" her attorneys,[4] and the only evidence that her motion claims was "untimely disclosed."[5] In fact, though, TD provided that information to Ms. Johnson's attorneys with its discovery responses on September 4, 2019, and Ms. Johnson's attorney Mohammed Badwan — who signed her motion[6] — examined TD's designated witness, Susan Wolf, about it at TD's organizational deposition on November 26, 2019.

---

[2] *Id.*, ¶ 17.

[3] *Id.*, ¶ 23 at 4.

[4] *See* ECF Doc. 59, ¶ 17 at 3.

[5] *See id.*, ¶¶ 20–21 at 3–4.

[6] *Id.* at 6.

2

On September 4, 2019, TD produced documents that included archived notes from its credit-card servicer Target[7] for the April 6, 2017 call.[8] The notes on page T268 include four entries on that date:

| | | | | | | |
|---|---|---|---|---|---|---|
| 61885383 | 042 | 2017-04-06 | 23:37:55 | KMCP | IVR001 | 000000000000000000000007082006818 |
| 61885383 | 866 | 2017-04-06 | 23:37:55 | KMCP | IVR001 | ALT ONE ALT ONE E |
| 61885383 | 900 | 2017-04-06 | 23:37:56 | KAMO | IVR001 | PHONE USAGE PERMISSION GRANTED |
| 61885383 | 900 | 2017-04-06 | 23:37:56 | KAMO | IVR001 | PHONE USAGE PERMISSION GRANTED |

The first entry contains the ten-digit (after excluding the leading zeroes) phone number from which the IVR was called: "7082006818." Ms. Johnson's motion doesn't exhibit that note, but it was an exhibit at TD's deposition, where Mr. Badwan asked Ms. Wolf about it:

```
21    Q.   Okay. Did you receive a response
22    from Ms. Johnson?
23    A.   Um, we received a phone call back
24    from –
 1    Q.   When did you receive a phone call
 2    back?
 3    A.   On April 6th.
 4    Q.   Okay. And where is that reflected
 5    in, um, Exhibit 11?
 6    A.   On page 268.
 7    Q.   Okay. Where does it reflect that
 8    there was a phone call between Target and Ms.
 9    Johnson?
10    A.   Uh, about a third of the way down the
11    page, she called in and left information on our
12    interactive voice response unit in response to a
13    message left on her phone number.[9]
```

---

[7]TD issues the Target-branded credit card, also known as the REDcard. Undisputed Facts [ECF Doc. 56], ¶ 2 at 2. Target provides credit-reporting and recordkeeping services in connection with the Target-branded credit cards that TD issues. *Id.*, ¶ 20 at 7.

[8]*See* Email from BTFileShare to Mohammed Badwan (9/4/19) [Ex. A].

[9]Wolf Dep. [ECF Doc. 59-1] at 100:21 – 101:13.

3

It was also an exhibit to TD's summary-judgment motion.[10]

More to the point, Mr. Badwan did ask Ms. Wolf during TD's organizational deposition about the phone number from which the April 6, 2017 call came. Ms. Johnson's motion at paragraph 20 quotes TD's statement of undisputed facts at paragraph 18, highlighting the sentence that contains the phone number:

> 20. TD Bank's Statement of Undisputed Material Fact No. 18 states: **On April 6, 2017, Target received a call at 11:37 p.m. from 708.200.6818.** The call was outside normal business hours, so it was routed to an Interactive Voice Response system. The caller did not speak with a live representative but, through the interactive system, the caller keyed in the 16-digit account number and the last four digits of Ms. Johnson's social-security number. *Id.* at pg. 6. (emphasis added).[11]

But Ms. Johnson's motion omits TD's citations to the record for Facts ¶ 18. TD's statement of facts cites Ms. Wolf's declaration, TD's notes at page T268, and Ms. Wolf's deposition at pages 100–03 and pages 147–48.[12] Ms. Johnson's motion focuses on, and repeatedly cites, Ms. Wolf's deposition at pages 100–03,[13] where Mr. Badwan asks Ms. Wolf about the April 6, 2017 call, interrupts her as she was about to say where "we

---

[10]ECF Doc. 57-3.

[11]ECF Doc. 59, ¶ 20 at 3–4 (emphasis in Ms. Johnson's motion) (quoting ECF Doc. 56, ¶ 18 at 6).

[12]ECF Doc. 56, ¶ 18 at 6 (citing "Wolf Decl., ¶ 11 at 4; TSYS Archived Notes [Melendez Decl., Ex. C], T268 at 2017-04-06; *see* Wolf Dep. [Melendez Decl., Ex. L] at 100:21 – 103:6; *id.* at 147:11 – 148:8").

[13]ECF Doc. 59, ¶¶ 6–12 at 2 (citing Wolf Dep. [ECF Doc. 59-1] at 101–03).

4

received a phone call back from—,"[14] then neglects to ask her what number the call came from or how TD knew that it was from Ms. Johnson. But later in the deposition, in an exchange that Facts ¶ 18 cites but which Ms. Johnson's motion ignores, Ms. Wolf testifies:

```
11    A.   We also called another number that
12  was provided to our IVR and --
13    Q.   Okay. And what was that number?
14    A.   Uh, 708-200-6818.[15]

22    Q.   And how did -- how did TD Bank obtain
23  that number?
24    A.   Um, it was provided to us on April
 1  6th of 2017 by the person that called in in
 2  response to the letter.
 3    Q.   Sorry. It was April 6th?
 4    A.   Correct.
 5    Q.   2017, okay.
 6         And does -- in that phone call, was
 7  -- did anyone -- did a live representative speak
 8  to Ms. Johnson?
 9    A.   No.[16]
```

So Ms. Wolf testified at TD's organizational deposition in November 2019 that the number "that was provided to our IVR" on the April 6, 2017 call was "708-200-6818" — exactly the information by which Ms. Johnson's attorneys now say they were "blindsided" in TD's summary-judgment motion.

---

[14] Wolf Dep. [ECF Doc. 59-1] at 100:23 – 101:2.

[15] *Id.* at 147:11–14.

[16] *Id.* at 147:22 – 148:9.

5

II. **The call-flow script that TD provided in early January 2020 didn't exist during discovery, since it wasn't created until December 2019.**

The phone number by which Ms. Johnson's attorneys say they were "blindsided" in January 2020 was provided in September 2019, and Ms. Wolf testified about it at her deposition in November 2019. The inquiry ought to end there, and this Court should deny Ms. Johnson's motion. But even if the inquiry were to go further, the Court should still deny Ms. Johnson's motion, both because the call-flow script that TD provided in early January 2020 wasn't created until December 2019 and therefore didn't exist during discovery, and because the issue that Ms. Johnson's motion raises is a red herring.

An Interactive Voice Response, or "IVR," system

> is a technology that allows a computer to interact with humans through the use of voice and DTMF [dual-tone multi-frequency] tones input via a keypad. In telecommunications, IVR allows customers to interact with a company's host system via a telephone keypad or by speech recognition, after which services can be inquired about through the IVR dialogue. IVR systems can respond with pre-recorded or dynamically generated audio to further direct users on how to proceed.[17]

The document that TD produced to Ms. Johnson's attorneys on January 7, 2020, was a call-flow script that Ms. Wolf and her colleagues reconstructed from Target's IVR system in December 2019, after discovery ended. The document did not exist until just before the year-end holidays, and TD produced it the week after the New Year's holiday.

The only record from the April 6, 2017 call that routinely appears in Target's account notes is the information on T268, which Target produced on September 4, 2019.

---

[17] Wikipedia: The Free Encyclopedia, "Interactive voice response," *online at* https://en.wikipedia.org/wiki/Interactive_voice_response (accessed Feb. 13, 2020).

6

That record identifies the IVR call, including the number from which the call came, and notes certain kinds of information based on the caller's interaction with the system. The system does keep a record of the caller's inputs, but that information is seldom needed and therefore is not maintained in a readily accessible form, although it can be extracted and reconstructed through a forensic process.

In December 2019, because Mr. Badwan had asked for it it at TD's organizational deposition in late November, Ms. Wolf and her colleagues did extract and reconstruct the information from the April 6, 2017 call. The raw information consists mostly of technical codes that are meaningless to a nonspecialist so, at TD's attorney's request, they also prepared "a narrative . . . to explain the information in the other columns" for the benefit of Ms. Johnson's attorneys.[18]

The call-flow script that TD provided in early January 2020 didn't exist during discovery, since it wasn't created until December 2019. TD produced the narrative to Ms. Johnson's attorneys shortly after it was prepared; before that point, even TD itself didn't have access to any new information that the document contained. TD's summary-judgment motion did not use any information from the call-flow script that wasn't already in the documents that TD produced in September 2019, or that Ms. Wolf hadn't been prepared to testify about at TD's organizational deposition in November 2019.

---

[18]*See* Email from Brian Melendez to Mohammed Badwan (1/7/20 at 2:07 p.m.) [ECF Doc. 59-2 at 3].

III. **The issue that Ms. Johnson's motion raises is a red herring.**

Finally, Ms. Johnson is asking this Court to focus on her competing narrative — in this instance, that she "did not place a phone call to Target or TD Bank on April 6, 2017 at 11:37 p.m. from [her] cellular phone number (708) 200-6818"[19] — rather than on the actual legally relevant issue: whether TD's investigation into her dispute was reasonable. Ms. Johnson's motion argues for reopening discovery in order to "gather evidence that refutes TD Bank's contention that the April 6, 2017 phone call came from Plaintiff's phone number,"[20] and so that she and her attorneys can "issue[] a subpoena to her wireless carrier to obtain her phone records for April 7, 2017 [sic], which Plaintiff believes would refute TD Bank's contention that the April 7, 2017 [sic] phone call was placed from Plaintiff's phone number."[21] But that argument is a red herring.

On summary judgment, this Court need not decide the underlying facts — such as whether Ms. Johnson was a victim of identity theft, or who called Target on April 6, 2017. The Court must decide only whether TD's investigation into her dispute was reasonable. A furnisher's reinvestigation of a consumer's dispute must be *reasonable*,[22] but it need not be *perfect*: "the requirement that furnishers investigate consumer disputes is procedural. An investigation is not necessarily unreasonable because it results in a

---

[19] Johnson Decl. [ECF Doc. 59-4], ¶ 5 at 1.

[20] ECF Doc. 59, ¶ 23 at 4.

[21] *Id.*, ¶ 24.

[22] *Gorman v. Wolpoff & Abramson, LLP*, 552 F.3d 1008, 1015–17 (9th Cir. 2009); *Johnson v. MBNA Am. Bank, NA*, 357 F.3d 426, 429–31 & n.2 (4th Cir. 2004).

8

substantive conclusion unfavorable to the consumer, even if that conclusion turns out to be inaccurate."[23] And even where an investigation does reach an inaccurate conclusion, a defendant "can escape liability if it establishes that an inaccurate report was generated by following reasonable procedures."[24] A question as to whether a furnisher's reinvestigation was reasonable is appropriate for summary judgment.[25]

Ms. Johnson's motion to reopen discovery seeks information that was unavailable to Target when it investigated Ms. Johnson's credit-reporting dispute with regard to information that TD was furnishing to Equifax. Such information has no bearing on her claim about whether the investigation was reasonable, since the information was unavailable during the investigation. The information available to Target was that—

- Target mailed a letter to an address associated with Ms. Johnson's prior account, but not associated with the subject account, asking that Ms. Johnson call Target in order to verify the subject account;

---

[23]*Gorman*, 552 F.3d at 1021 (court's emphasis).

[24]*Cahlin v. General Motors Acceptance Corp.*, 936 F.2d 1151, 1156 (11th Cir. 1991); *cf. Sarver v. Experian Info. Solutions*, 390 F.3d 969, 972 (7th Cir. 2004) ("a mistake [in a consumer reporting agency's investigation] does not render the procedures unreasonable"); *Henson v. CSC Credit Servs.*, 29 F.3d 280, 284 (7th Cir. 1994).

[25]*Gorman*, 552 F.3d at 1017, 1021; *Westra v. Credit Control of Pinellas*, 409 F.3d 825, 827 (7th Cir. 2005).

9

- Target left a voicemail on a number associated with Ms. Johnson's prior account, but not associated with the subject account, in an attempt to verify the subject account; and
- less than a week later, Target received a response through its Interactive Voice Response system[26] from 708.200.6818[27] — Ms. Johnson's current cellular-telephone number.[28]

Target's records, which were produced to Ms. Johnson and her attorneys on September 4, 2019, contain all that information. The additional discovery that Ms. Johnson now seeks would not contradict it: even if, as Ms. Johnson's motion predicts, she could elicit phone records that did not show a call to Target on April 6, 2007, such evidence would not change the fact that 708.200.6818 is the number that was provided to Target through its IVR system.[29] More to the point, Ms. Johnson and her attorneys had a full and fair opportunity to examine TD's designated witness about that information, and a full and fair opportunity to subpoena her wireless carrier or otherwise seek out contradictory information, before discovery ended.

---

[26] Facts [ECF Doc. 56], ¶ 25(f) at 14.

[27] *Id.*, ¶ 18 at 6.

[28] ECF Doc. 59, ¶ 16 at 3; Johnson Decl. [ECF Doc. 59-4], ¶ 5 at 1.

[29] *See* Facts [ECF Doc. 56], ¶ 18 at 6.

## Conclusion

The phone number by which Ms. Johnson's attorneys say they were "blindsided" in January 2020 was provided in September 2019, and Ms. Wolf testified about it at her deposition in November 2019. The inquiry ought to end there, and this Court should deny Ms. Johnson's motion. But even if the inquiry were to go further, the Court should still deny Ms. Johnson's motion, both because the call-flow script that TD provided in early January 2020 wasn't created until December 2019 and therefore didn't exist during discovery, and because the issue that Ms. Johnson's motion raises is a red herring. TD's summary-judgment motion did not use any information that wasn't already in the documents that TD produced in September 2019, or that Ms. Wolf hadn't been prepared to testify about at TD's organizational deposition in November 2019.

Therefore, TD respectfully asks that this Court deny Ms. Johnson's motion.

February 13, 2020.

BARNES & THORNBURG LLP

/s/ Brian Melendez

Brian Melendez, License No. 0223633
   (Minn.) (admitted pro hac vice)
Suite 2800
225 South Sixth Street
Minneapolis, MN 55402-4662
Ph. 612.367.8734
Fax 612.333.6798
brian.melendez@btlaw.com

                in association with

11

Amy R. Michelau
BARNES & THORNBURG LLP
Suite 4400
One North Wacker Drive
Chicago, IL 60606-2833
Ph. 312.214.4860
Fax 312.759.5646
amy.michelau@btlaw.com

Attorneys for Defendant
   TD Bank USA, N.A.

12